IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFRY R. BROOKS,                           )
                        Plaintiff,          )
                                            )
            v.                              )        Case No.: 11-cv-2600 CM/DJW
                                            )
UNIVERSAL UNDERWRITERS GROUP;               )
ZURICH AMERICAN INSURANCE                   )
COMPANY; ZURICH HOLDING COMPANY             )
OF AMERICA, INC. d/b/a ZURICH,              )
                        Defendant.          )

**PLAINTIFF'S COMPLAINT, DEMAND FOR JURY TRIAL AND
DESIGNATION OF PLACE OF TRIAL**

Plaintiff Jeffry R. Brooks, by and through his attorneys, and for his Complaint, Demand

for Jury Trial and Designation of Place of Trial states and alleges as follows:

**JURISDICTION & VENUE**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. Sec. 1332,

diversity of citizenship, and claims in excess of $75,000 exclusive of interest and costs, pursuant

to 28 U.S.C. Sec. 1331, and because of a federal question.

2.      This matter is in excess of the sum of seventy five thousand dollars ($75,000),

exclusive of interest and costs.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims set forth herein occurred in

the State of Kansas, and Defendant is registered to do and is doing business in the State of

Kansas, subjecting it to personal jurisdiction in this action and making it a "resident" of this

judicial district pursuant to 29 U.S.C. § 1391(c).

4.      Plaintiff's claims for discrimination and retaliation are based upon the Americans

with Disabilities Act ("ADA"), as amended, the Americans with Disabilities Act Amendment

Act of 2008 ("ADAAA"), as amended; the Family Medical Leave Act ("FMLA"); and, the Kansas Act Against Discrimination ("KAAD").

## PARTIES

5.     Plaintiff Jeffry Brooks is a citizen and resident of the State of Kansas with an address of 7016 Long Avenue, Shawnee, Kansas 66216.

6.     Defendant using the names of Universal Underwriters Group, Zurich American Insurance Company and Zurich Holding Company of America, Inc. d/b/a Zurich ("Zurich") is a corporation incorporated in 1400 American Lane T-1, F-4, Schaumburg, Illinois 60196, duly authorized and registered to engage in business, is doing business within the state of Kansas and may be served with notice and summons by serving its registered agent, Corporation Service Company located at 200 SW 30TH Street, Topeka, Kansas 66611.

7.     Plaintiff and defendant are citizens and residents of different states.

## GENERAL ALLEGATIONS

8.     Mr. Brooks was employed by Zurich on October 8, 2003 as a Subrogation Analyst/Claim Attorney.

9.     In May, 2005, plaintiff Brooks experienced a sudden and unexpected heart attack and underwent quadruple coronary bypass surgery. Mr. Brooks was placed on a two (2) month short term disability leave from work. Mr. Brooks continues to take medications and remains under a doctor's care related to this condition.

10.     Starting in approximately July of 2005 Mr. Brooks began complaining to Zurich repeatedly alleging discrimination and harassment against him based on his disability, his record of a disability and being regarded as having a disability.  Zurich ignored his concerns.

11.     During summer of 2007 Zurich management threatened to alter and lower Mr.

Brooks' job responsibilities.   Soon after, Mr. Brooks' job responsibilities were altered and lowered.

12.     On or about October 1, 2007, Mr. Brooks filed Complaint # 31273-08 with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") that included charges of disability discrimination, harassment and retaliation against Defendant, for among other things, violations of the Americans with Disabilities Act and the Kansas Act Against Discrimination.

13.     Shortly after Mr. Brooks filed is charge with the KHRC, he began to experience increased instances of discrimination, harassment and retaliation.

14.     Shortly after Mr. Brooks filed his charge with the KHRC, Mr. Brooks' manager reassigned additional files to him.   Prior to filing his KHRC complaint, Mr. Brooks was in charge of approximately 60 cases.   After filing his KHRC complaint, Mr. Brooks was immediately assigned 53 additional cases, of a type which was normally handled by first year employees. Mr. Brooks' case load continued to steadily increase, and as of May, 2008, his case load was 157 cases, with the potential to reach 700 cases or more.

15.     After he filed the KHRC complaint, Mr. Brooks was assigned more files of lesser value, while still being expected to handle large, complex cases at the same time.

16.     During his employment with the defendant, with the exception of one year, Mr. Brooks was the number one producer for Zurich Direct Underwriters, a subsidiary of Zurich North America.

17.     From December, 2007 through his termination from Zurich, Mr. Brooks was subjected to disparate treatment compared to similarly situated non-disabled employees, including, but not limited to:

i.      his work was more closely scrutinized;

ii.     his actions were more closely monitored;

iii.    on September 15, 2008 Mr. Brooks was placed on a 60 Day Performance Improvement Plan after he had requested reasonable accommodations on June 6, 2008;

iv.     Mr. Brooks received cases of a smaller monetary value as well as received an unsuitable mix of the type and nature of cases assigned to him;

v.      Mr. Brooks workload was increased and altered beyond that of comparable employees and he was given cases of a number and type that is beyond that of similarly situated employees;

vi.     Mr. Brooks was denied recognition and monetary rewards for his achievements as compared to comparable employees;

vii.    Mr. Brooks' ability to perform his job tasks were negatively impacted by management directives as compared to that given to similarly situated employees;

viii.   after requesting a reasonable accommodation in June, 2008, Mr. Brooks was not provided with an accurate and complete job description;

ix.     Mr. Brooks was subjected to distorted, inaccurate and negative performance evaluations that were not comparable to similarly situated employees;

x.      Mr. Brooks was assigned the same type of work performed by substantially less experienced employees, in addition to his already complex cases;

xi.    Mr. Brooks ability to conduct one of the essential functions of his position, mediation, was impacted negatively by management directives which were in direct contravention of Company policy;

xii.   Mr. Brooks was forced to take leave in order to work at home while similarly situated, non-disabled employees were allowed to work at home without taking leave;

xiii.  Mr. Brooks was harassed the day after he returned from vacation about his excessive case load by his supervisor;

xiv.   and his wages were adversely affected because he was subjected to a distorted, inaccurate, discriminatory and negative performance evaluation.

xv.    All of these actions were in retaliation for having opposed acts and practices which violated, among other things, the Americans with Disabilities Act.

18.    After returning from paid vacation leave on June 3, 2008, Mr. Brooks' supervisor immediately retaliated and discriminated against him by meeting with him to inform him that he had scrutinized some of his files while he was on leave and the supervisor believed that Mr. Brooks was too far behind in his case load.

19.    In February, 2008 Mr. Brooks' supervisor required that he take a day of leave in order to work at home during a bad weather day, while similarly situated, non-disabled employees were allowed to work at home without taking a leave day. The supervisor even contacted Mr. Brooks at home that day to discuss work.

20.    In February, 2008 Mr. Brooks obtained the largest recovery for Zurich Direct Underwriters, a subsidiary of Zurich North America, since 1922, but management chose not to

give him the same monetary award and recognition that a comparable non-disabled employee was given, even though that employee did not achieve similar successful results compared to Mr. Brooks.

21.    On or about June 3, 2008, Mr. Brooks requested a reasonable accommodation from Zurich.

22.    On or about June 6, 2008, Mr. Brooks met with his supervisor, upper management and Human Resources personnel to discuss his request for reasonable accommodation in the number and types of claims he had been assigned since October, 2007, but he was told that they would have to continue to discuss his request.

23.    At the meeting on June 6, 2008, and in written communications to Zurich's management, Mr. Brooks made it clear what accommodations he was requesting.

24.    On or about June 24, 2008, Mr. Brooks filed an amended Complaint # 31273-08 with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") that included charges of disability discrimination, harassment and retaliation against Defendant, for among other things, violations of the Americans with Disabilities Act and the Kansas Act Against Discrimination.

25.    On or about June 24, 2008, Zurich's Human Resources Manager Tanya Brown sent an email to Mr. Brooks stating, among other things, "I have enclosed an accommodation request form below."  The email further stated "[w]e then asked you if the 60 files (the number in which you have asked us to accommodate)" and "[y]ou said that you could not do anymore than 60 because of your condition."

26.    Mr. Brooks' supervisor demanded that from that day forward, he report to him on a daily basis about each file Mr. Brooks had updated that day; however, others whom he

supervised did not have that requirement.

27.     Mr. Brooks reminded his supervisor how he had overloaded him with work and that Mr. Brooks had told him that he could not get everything done, given the increasing amount and kind of files he was assigned since October, 2007 subsequent to filing his KHRC complaint.

28.     On or about September 16, 2008, Mr. Brooks was placed on a performance plan. During the meeting, Mr. Brooks went over the charges in his KHRC complaints with his supervisor.  Mr. Brooks told his supervisor that since October, 2007 his increasing assignments were a recipe for failure for him and his case load was unreasonable based upon the size and types of cases that Mr. Brooks handled.

29.     Mr. Brooks told his supervisor that the unreasonable amount and type of work and his treatment of him since October, 2007 was increasingly discriminatory and retaliatory, because he overloaded Mr. Brooks beyond what similarly situated employees were expected to do with their caseload.

30.     Mr. Brooks requested a meeting with Zurich's upper management and Human Resources personnel, who were involved in his disability complaints since 2005, to discuss reasonable accommodations, reasonable workload and expectations.

31.     On September 15, 2008 Zurich placed Mr. Brooks on a 60 Day Performance Improvement Plan that should have ended on or about November 14, 2008; however, the Plan was continued and on January 16, 2009, Mr. Brooks was placed on another 60 Day Performance Improvement Plan.

32.     On September 16, 2008 Mr. Brooks' supervisor gave him his mid-year evaluation, which was not accurate in part and was retaliatory.

33.     On October 10, 2008, although Mr. Brooks had not been given a complete,

accurate or current job description, he completed the paperwork given to him by Zurich for his request for reasonable accommodation and gave it to Zurich's Human Resources Department.

34.     On October 16, 2008, without requesting that Mr. Brooks be medically examined, without requesting any of his medical records and without even meeting with him, Zurich's Human Resources Representative, Tanya Brown, responded and denied his October 10, 2008 request for accommodation.

35.     In the letter, Zurich stated, among other things, that "[t]he information provided does not suggest any present substantial impairment of any major life activity, nor does the information show how the requested accommodation would allow you to perform the essential functions of your job."

36.     Although Mr. Brooks requested a job description outlining the essential functions of his job, Zurich failed provide this information.   As requested by the letter, Mr. Brooks provided additional information to Zurich.

37.     On or about October 20, 2008, Mr. Brooks filed Complaint # 32201-09 with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") that included charges of disability discrimination, harassment and retaliation against Defendant, for among other things, violations of the Americans with Disabilities Act and the Kansas Act Against Discrimination.

38.     On November 14, 2008, Mr. Brooks provided a Memorandum to Tanya Brown, John Werdell and Kyle Moreland regarding his request for an accommodation.   Mr. Brooks' Memorandum again requested Zurich reconsider his request for an accommodation.

39.     On November 21, 2008, after providing additional information to Zurich regarding his request for accommodation, again without requesting that Mr. Brooks be medically

examined, without requesting any of his medical records and without even meeting with him, Zurich's Human Resources Representative, Tanya Brown, denied his October 10, 2008 request for accommodation.

40.     The email stated, among other things, that "[i]n addition to your job profile I have asked Kyle Moreland to provide you with the primary essential functions for your position."

41.     As noted in the email, as of November 21, 2008, Zurich had failed to provide Mr. Brooks with the essential functions of his job.

42.     On November 26, 2008, Kyle Moreland sent Mr. Brooks an email extending the 60 Day Performance Improvement Plan and made its completion contingent upon being current on diary.  To justify the 60 Day Performance Plans and heavy scrutiny of Mr. Brooks' work, Zurich took the position that Mr. Brooks had a long history of failing to keep a proper diary.

43.     On December 2, 2008, Mr. Brooks was approved for FMLA leave that was retroactive to October 13, 2008.  Pursuant to the letter the "Leave Reason" was "a serious health condition, including pregnancy, that makes you unable to perform the essential functions of your job".  The letter that was copied on Kyle Moreland further stated that Mr. Brooks was granted FMLA leave that was "'Qualified' from 10/13/2008 through 04/13/2009."

44.     On December 2, 2008, Zurich's FMLA Leave Administration sent a letter to Mr. Brooks copying Kyle Moreland stating that he was granted FMLA leave that was "'Qualified' from 10/13/2008 through 04/13/2009."

45.     The form, Zurich North America REQUEST FOR ACCOMMODATION, specifically stated, among other things, that:

> In order for us to determine whether an accommodation can be made, we need to establish whether you have a disability as defined by the *Americans With Disabilities Act* **or other applicable law**.

46.     On or about December 11, 2008, Mr. Brooks met with Kyle Moreland and John Werdell (by phone) to discuss his performance.   At the December 11, 2008 meeting, Mr. Moreland advised Mr. Brooks that the requirement that Mr. Brooks update 4 files a day was a bare minimum and that accomplishing and meeting 4 files a day was not enough.  Mr. Brooks was then advised that he was being progressively disciplined.

47.     On December 18, 2008, at the request of Zurich, Mr. Brooks met with Kyle Moreland to follow up on the December 11, 2008 meeting Mr. Brooks had with Mr. Moreland and John Werdell.  Prior to the meeting, Mr. Moreland requested that Mr. Brooks prepare ideas and suggestions for improving his performance.   During the meeting Mr. Werdell and Mr. Moreland advised Mr. Brooks that he was being progressively disciplined due to his diary.

48.     On December 18, 2008, Mr. Brooks provided Kyle Moreland with a list of possible accommodations for Zurich to review.  Zurich failed to provide a written response.

49.     Any alleged failure to perform only occurred after Mr. Brooks' caseload was nearly doubled immediately after filing his initial complaint with the KHRC in October 2007.

50.     Although Mr. Brooks' FMLA leave was not granted until December 2, 2008, he was granted intermittent FMLA leave by Zurich's FMLA Leave Administration.  The leave was retroactive to October 13, 2008.  Pursuant to the letter the "Leave Reason" was "a serious health condition, including pregnancy that makes you unable to perform the essential functions of your job".

51.     Zurich's FMLA Leave Administration recognized that Mr. Brooks had a serious health condition that made him unable to perform the essential functions of his job when it approved his FMLA leave.

52.     Zurich failed to follow its own process for evaluating Mr. Brooks request for an accommodation.

53.     Zurich failed to participate in its own "interactive process" to "work with [him] to determine a reasonable accommodation which will assist [him] in meeting the requirements of the job."

54.     Instead, Zurich delayed the process for months by failing to provide Mr. Brooks with a correct job description, failing to provide him the essential functions of his job and placing him on multiple 60 day performance plans.

55.     Zurich failed to provide Mr. Brooks with any reasonable accommodation and refused to participate in the process in good faith.

56.     As of March 4, 2009, Zurich had failed to provide a complete, current or accurate job title or job description that would allow him to more accurately complete paperwork given to him by Zurich for his request for reasonable accommodation.

57.     Since the time Mr. Brooks began requesting an accommodation, Zurich continuously gave Mr. Brooks inconsistent information regarding his job title, his job description and his job duties, while increasing the number of claims files he was required to handle.

58.     After he began filing complaints with the KHRC and the EEOC, Mr. Brooks was assigned all property files in the 50 states, a job assignment which no comparable employee had been given by Zurich.

59.     In 2008, Mr. Brooks' supervisor told him that he had nominated Mr. Brooks for the Silver Award, but upper management refused to award him that honor and he was given the Bronze Award instead.   Mr. Brooks' achievement matched and exceeded that of previous winners of the Silver and Gold Awards.   As a result of management's refusal to nominate Mr.

Brooks for the Gold Award, he was not eligible for the Gold Award which was worth approximately $5,000.00.

60.     Sometime in December 2008, Mr. Brooks' job title was changed in the Zurich directory to Recovery Specialist III.  This change in title was a demotion.  Mr. Brooks was never advised of the change in title.

61.     Zurich was aware that while employed by Zurich that Mr. Brooks had been diagnosed and treated for, at least, the following impairments:

   a)   Cardiac and coronary artery disease

   b)   Depression and anxiety

   c)   Lower back pain

   d)   Skin cancer

   e)   Record of 4 vessel bypass grafting

   f)   Bell's palsy

   g)   Degenerative joint disease/arthritis

   h)   Record of uticarial reaction

   i)   Hyperlipidemia

62.     Zurich has been and is aware of Mr. Brooks' continuing disability status.

63.     Zurich discriminated against Mr. Brooks, harassed him and retaliated against him based on his disability, the record of his disability, and having regarded him as having a disability.

64.     Mr. Brooks has a record of a disability.

65.     Zurich was aware of all records pertaining to both Mr. Brooks' physical and mental disabilities.

66.     Mr. Brooks was regarded as having a disability by Zurich.

67.     Zurich discriminated against Mr. Brooks, harassed Mr. Brooks and retaliated against Mr. Brooks based on it having regarded Mr. Brooks as having a disability.

68.     Mr. Brooks has openly opposed acts and practices forbidden by the Kansas Act Against Discrimination.

69.     Zurich has retaliated against Mr. Brooks because he has openly opposed acts and practices forbidden by the Kansas Act Against Discrimination and the Americans with Disabilities Act.

70.     Complaints regarding Mr. Brooks' performance only began after he requested a reasonable accommodation, requested FMLA leave and filed complaints with the KHRC and the EEOC.

71.     On January 1, 2009, the Americans with Disabilities Act Amendment Act of 2008 (ADAAA) went into effect.  The ADAAA expressly overruled the Supreme Court's narrowing definition of "disability" and dramatically expanded the definition of "persons with a disability".  Although the ADAAA became effective on January 1, 2009, Zurich continued to refuse to participate in Mr. Brooks' request for an accommodation.

72.     Zurich's refusal to reevaluate his request for an accommodation based upon the ADAAA is a violation of the Act, was discriminatory and was done in retaliation to Mr. Brooks' original complaints.

73.     Mr. Brooks was on vacation and out of the office from January 5, 2009 to January 12, 2009.

74.     On January 14, 2009, Mr. Brooks met with Kyle Moreland so that Mr. Brooks could get an accurate list of the essential functions of his job to allow him to request an

accommodation and FMLA leave.

75.     On January 16, 2009, Mr. Brooks received a Verbal Warning alleging performance problems and placed Mr. Brooks on another 60 Day Performance Plan.  On January 16, 2009, Kyle Moreland emailed Mr. Brooks a Plan for Improvement adding additional parameters to his job and adding additional reporting requirements.

76.     On January 29, 2009, Kyle Moreland sent an email to Trisha Ambrose, June Delgadillo, James Williams, James Milam, Janette Coffelt, Jamey Kelly, Rebecca Roberts, Amy Verdibello and Mr. Brooks regarding the net recovery report for January 2009.   The email specifically singled out Mr. Brooks to his co-workers and impliedly suggests that he did something incorrect or improper.

77.     On February 5, 2009, Kyle Moreland provided Mr. Brooks with an update concerning his Plan for Improvement, specifically, Mr. Moreland stated:

   A.     You are hitting your target on diary updates. I am seeing a minimum of 4
          updates per day with most days 5 and 6 updates.

   B.     You fell short of a 100% closing ratio for January.  The database shows
          only 12 assignments in January and your pending went from 189 to 198.

   C.     Your work area has not been cleaned up and this must be done within the
          next 30 days without fail.

   D.     I have seen only one case summary noted in your file notes.  Let me know
          as you complete case summaries.

78.     Mr. Brooks was updating his diary as requested and often exceeded expectations.

79.     Mr. Moreland failed to acknowledge Mr. Brooks' successful steps toward completion of the Improvement Plan requirements, shifted his demands to additional other matters alleged against Mr. Brooks.

80.     On March 16, 2009, Mr. Brooks received a Written Warning alleging

performance problems.

81.     On March 16, 2009, Kyle Moreland placed Mr. Brooks on a 45 day "Written Warning for unsatisfactory performance effective 3/16/09".   In the Written Warning Mr. Moreland also stated:

> I encourage you to review your goals and competencies and if appropriate identify and discuss with me internal training that may assist in your success.  As your manager, I am available to assist in your improvement plan and encourage you to come to me with questions, concerns, or for assistance.  Zurich also has an EAP program as an available benefit to all employees.

82.     In the March 16, 2009 letter, Zurich failed to acknowledge, among other things, that by this time, Mr. Brooks had made numerous requests for reasonable accommodation. Additionally, Zurich failed to acknowledge that Mr. Brooks had also made numerous requests for an accurate job description, a complete and accurate list of the essential functions of his job, and that Mr. Brooks was granted FMLA leave for health related problems.

83.     The Written Warning stated that Mr. Brooks would "be monitored for 45 days and you will achieve full compliance with the outlined performance standards, by no later than May 1st 2009."  The Written Warning further stated that "[i]mmediate improvement will be expected and it must be maintained throughout the year."

84.     The 45 day warning period should have expired on or before April 30, 2009, no further corrective action was taken against Mr. Brooks during the 45 day period and Mr. Brooks was never advised that he had failed to perform as expected during the 45 day warning period.

85.     On or about March 27, 2009, Mr. Brooks filed an amended Complaint in docket # 32201-09 with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") that included charges of disability discrimination, harassment and retaliation against Defendant, for among other things, violations of the

Americans with Disabilities Act and the Kansas Act Against Discrimination.

86.     On or about April 16, 2009, Zurich's FMLA Leave Administration sent a letter to Mr. Brooks copying Kyle Moreland stating that "[y]our request to extend your FMLA and/or State leave due to your own serious health condition has been approved through 10/12/2009."

87.     On May 27, 2009, Mr. Brooks received a Final Warning and he was placed on probation for alleged performance problems.

88.     Pursuant to the Final Warning, Mr. Brooks was "placed on Probation for unsatisfactory performance effective 5/27/09."

89.     The Final Warning stated that Mr. Brooks would "be monitored for the next 60 days."

90.     The 60 day warning period should have expired on July 27, 2009.

91.     In his Mid-Year Review dated August 31, 2009, Kyle Moreland specifically admitted that Mr. Brooks' overall performance had improved.

92.     Mr. Brooks was never advised that he had failed to perform as expected during the 60 day warning period.

93.     On or about Monday, November 2, 2009, Zurich's FMLA Leave Administration sent a letter to Mr. Brooks copying Kyle Moreland stating that "[y]our request to extend your FMLA and/or State leave due to your own serious health condition has been approved through 4/13/10."

94.     On or about Monday, November 2, 2009, Mr. Brooks was terminated by Zurich.

95.     On November 4, 2009, the defendant sent Mr. Brooks a letter confirming his termination:

This letter confirms your termination from Zurich North America Customer Services/Claims effective November 2, 2009. On January 16, 2009 you received a Verbal Warning for performance. On March 16, 2009 you received a Written Warning for performance.  On May 27, 2009 you were placed on Probation and Final Warning for performance. On November 2, 2009, I discussed with you the events resulting in your termination.

96.     On or about November 25, 2009, Mr. Brooks filed Complaint # 33351-10 with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") that included charges of disability discrimination, harassment and retaliation against Defendant, for among other things, violations of the Americans with Disabilities Act and the Kansas Act Against Discrimination.

97.     During all of 2009, Mr. Brooks had been taking approved leave pursuant to the Family Medical Leave Act (FMLA).

98.     The allegations of performance problems were a pretext to terminate Mr. Brooks.

99.     Since 2005, Mr. Brooks' wages were adversely affected by the disability discrimination, harassment and retaliation by Zurich and his salary did not keep pace with similarly situated non-disabled employees.

100.    During his employment with Zurich, Mr. Brooks satisfactorily performed his job duties and was given pay increases.  Only after Zurich learned that Mr. Brooks had disabilities did the defendant start to allege performance issues.

101.    At the time Mr. Brooks was terminated he was earning in excess of $85,000 per year including bonuses and other fringe benefits.

102.    Zurich knew about Mr. Brooks' disabilities, his need for medical treatment and his ongoing medical treatment.

103.    Zurich knew about Mr. Brooks' record of disabilities.

104.    Zurich perceived Mr. Brooks as having a disability or of being disabled.

105.    Zurich discriminated against Mr. Brooks on the basis of his disabilities.

106.    Zurich retaliated against Mr. Brooks on the basis of his disabilities.

107.    Mr. Brooks' disabilities were a motivating and/or determining factor in the treatment, discrimination and/or retaliation of Mr. Brooks during his employment.

108.    Mr. Brooks has attempted and continues to attempt to find another job.

109.    Mr. Brooks is an individual who has disabilities, is physically impaired and limited in one or more of his major life activities, thus bringing him within the ambit of the Americans' with Disabilities Act, the Civil Rights Act, the Family Medical Leave Act and the Kansas Act Against Discrimination.

110.    Over sixty (60) days have elapsed since the filing of Mr. Brooks' charge alleging unlawful discrimination.

111.    On or about August 9, 2010, after conducting its investigation, the Kansas Human Rights Commission issued three (3) separate Probable Cause determinations. A true and correct copy of said Case Summary Reports are attached hereto as **Exhibits "A","B" and "C"**.

112.    On or about October 31, 2011, Mr. Brooks received his notice of right to sue letters. A true and correct copy of said Right to Sue Letters are attached hereto as **Exhibits "D", "E" and "F"**.

113.    Mr. Brooks has fulfilled all conditions precedent to the filing of this action.

114.    Upon information and belief, Zurich has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Zurich's conduct towards Mr. Brooks was a part of this pattern or practice.

## COUNT I
### American's with Disabilities Act ("ADA")

115.     Plaintiff Jeffry Brooks hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 114 above as though fully set forth herein.

116.     The defendant discriminated against Mr. Brooks due to his disabilities and his request for reasonable accommodations.

117.     Mr. Brooks' termination constituted a discriminatory practice in violation of the ADA.

118.     Mr. Brooks' termination was not a reasonable accommodation.

119.     Mr. Brooks' disabilities were a determining factor in Zurich's discrimination of Mr. Brooks.

120.     Zurich was aware of the prohibitions against discrimination such that its actions were willful, entitling plaintiff to an award of liquidated damages.

121.     As a direct and proximate result of Zurich's actions in violation of the ADA, plaintiff sustained damages in the form of loss of salary and fringe benefits, including, but not limited to, contributions to Social Security and Medicare, health insurance, bonuses and stock options for which plaintiff seeks back pay.

122.     Plaintiff seeks the reasonable attorneys' fees and expenses incurred herein.

123.     Zurich's discrimination of Mr. Brooks was a direct and proximate result of Mr. Brooks' disabilities and his request for reasonable accommodations under the ADA.

124.     Zurich's refusal to provide Mr. Brooks with reasonable accommodations and its subsequent punishment of him for being disabled and requesting reasonable accommodations constituted egregious willful, wanton or malicious conduct.

125.   As a result of Zurich's conduct, Mr. Brooks has suffered economic and emotional damages.

126.   As a result of Zurich's conduct, Mr. Brooks has sustained past, present and future losses.

127.   As a result of Zurich's conduct, Mr. Brooks has suffered emotional distress, humiliation and embarrassment.

128.   The discriminatory conduct of Zurich against Mr. Brooks was willful, wanton or malicious, justifying the imposition of an award of punitive damages against Zurich.

129.   Upon information and belief, Zurich has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Zurich's conduct towards Mr. Brooks was a part of this pattern or practice.

WHEREFORE plaintiff Jeffry Brooks respectfully prays for judgment in his favor and against Defendant Zurich in the form of an order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding him back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding him lost fringe benefits in an amount yet to be determined; (5) awarding him liquidated damages in an amount yet to be determined; (6) awarding him damages for emotional distress, humiliation and embarrassment; (7) awarding him the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting him claims of discrimination; (8) awarding him punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

## COUNT II
### American's with Disabilities Act Amendments Act ("ADAAA")

130.　Plaintiff Jeffry Brooks hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 129 above as though fully set forth herein.

131.　The defendant discriminated against Mr. Brooks due to his disabilities and his request for reasonable accommodations.

132.　Mr. Brooks' termination constituted a discriminatory practice in violation of the ADAAA.

133.　Mr. Brooks' termination was not a reasonable accommodation.

134.　Mr. Brooks' disabilities were a determining factor in Zurich's discrimination of Mr. Brooks.

135.　Zurich was aware of the prohibitions against discrimination such that its actions were willful, entitling plaintiff to an award of liquidated damages.

136.　As a direct and proximate result of Zurich's actions in violation of the ADAAA, plaintiff sustained damages in the form of loss of salary and fringe benefits, including, but not limited to, contributions to Social Security and Medicare, health insurance, bonuses and stock options for which plaintiff seeks back pay.

137.　Plaintiff seeks the reasonable attorneys' fees and expenses incurred herein.

138.　Zurich's discrimination of Mr. Brooks was a direct and proximate result of Mr. Brooks' disabilities and his request for reasonable accommodations under the ADAAA.

139.　Zurich's refusal to provide Mr. Brooks with reasonable accommodations and its subsequent punishment of him for being disabled and requesting reasonable accommodations constituted egregious willful, wanton or malicious conduct.

140.    As a result of Zurich's conduct, Mr. Brooks has suffered economic and emotional damages.

141.    As a result of Zurich's conduct, Mr. Brooks has sustained past, present and future losses.

142.    As a result of Zurich's conduct, Mr. Brooks has suffered emotional distress, humiliation and embarrassment.

143.    The discriminatory conduct of Zurich against Mr. Brooks was willful, wanton or malicious, justifying the imposition of an award of punitive damages against Zurich.

144.    Upon information and belief, Zurich has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Zurich's conduct towards Mr. Brooks was a part of this pattern or practice.

WHEREFORE plaintiff Jeffry Brooks respectfully prays for judgment in his favor and against Defendant Zurich in the form of an order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding him back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding him lost fringe benefits in an amount yet to be determined; (5) awarding him liquidated damages in an amount yet to be determined; (6) awarding him damages for emotional distress, humiliation and embarrassment; (7) awarding him the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting him claims of discrimination; (8) awarding him punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

## COUNT III
## Retaliation (ADA and ADAAA)

145.   Plaintiff Jeffry Brooks hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 144 above as though fully set forth herein.

146.   The defendant retaliated against Mr. Brooks due to his disabilities and his request for reasonable accommodations.

147.   Mr. Brooks' write ups and subsequent termination constituted retaliatory practices in violation of the ADA and the ADAAA.

148.   Mr. Brooks' disabilities and his request for reasonable accommodations were determining factors in Zurich's retaliation and discrimination of Mr. Brooks.

149.   Zurich was aware of the prohibitions against retaliation such that defendant's actions were willful, entitling plaintiff to an award of liquidated damages.

150.   As a direct and proximate result of defendant's actions in violation of the ADA and the ADAAA, plaintiff sustained damages in the form of loss of salary and fringe benefits, including, but not limited to, contributions to Social Security and Medicare, health insurance, bonuses and stock options for which plaintiff seeks back pay.

151.   Plaintiff seeks the reasonable attorneys' fees and expenses incurred herein.

152.   Zurich's retaliation against Mr. Brooks was a direct and proximate result of Mr. Brooks' disabilities and his request for reasonable accommodations under the ADA and the ADAAA.

153.   Zurich's refusal to provide Mr. Brooks with reasonable accommodations and its subsequent punishment of him for being disabled and requesting reasonable accommodations constituted egregious willful, wanton or malicious conduct.

154.    As a result of defendant's conduct, Mr. Brooks has suffered economic and emotional damages.

155.    As a result of Defendant's conduct, Mr. Brooks has sustained past, present and future losses.

156.    As a result of Zurich's conduct, Mr. Brooks has suffered emotional distress, humiliation and embarrassment.

157.    The retaliatory conduct of the defendant against Mr. Brooks was willful, wanton or malicious, justifying the imposition of an award of punitive damages against Zurich.

158.    Upon information and belief, Zurich has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Zurich's conduct towards Mr. Brooks was a part of this pattern or practice.

WHEREFORE plaintiff Jeffry Brooks respectfully prays for judgment in his favor and against Defendant Zurich in the form of an order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding him back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding him lost fringe benefits in an amount yet to be determined; (5) awarding him liquidated damages in an amount yet to be determined; (6) awarding him damages for emotional distress, humiliation and embarrassment; (7) awarding him the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting him claims of discrimination; (8) awarding him punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

## COUNT IV
## Kansas Act Against Discrimination ("KAAD")

159.    Plaintiff Jeffry Brooks hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 158 above as though fully set forth herein.

160.    Zurich acting through its employees and agents discriminated and retaliated against Mr. Brooks on the basis of him disability.

161.    Zurich acting through its employees and agents intentionally discriminated and retaliated against Mr. Brooks on the basis of him disability.

162.    Zurich would not have treated and does not treat people that are not disabled in the same manner.

163.    Zurich therefore deprived Mr. Brooks the full and equal benefits of all laws and proceedings that are enjoyed by citizens that are not disabled.

164.    Mr. Brooks has been damaged as a direct and proximate result of Zurich's actions. In particular, he suffered injuries including, but not limited to, economic and emotional damages, past, present and future losses, lost income, emotional distress, anxiety, humiliation and embarrassment.

165.    Zurich's actions were willful, wanton, reckless and malicious, and further showed a complete and deliberate indifference to, and conscious disregard for the rights of Mr. Brooks.

166.    Mr. Brooks is entitled to an award of punitive or exemplary damages in an amount sufficient to punish or to deter Zurich and other companies from like conduct in the future.

167.    Mr. Brooks is entitled to recover from Zurich his reasonable attorneys' fees, expert witness fees and other costs of litigation.

168.   Upon information and belief, Zurich has engaged in a pattern or practice of discrimination and retaliation against people with disabilities, and Zurich's conduct towards Mr. Brooks was a part of this pattern or practice.

WHEREFORE plaintiff Jeffry Brooks respectfully prays for judgment in his favor and against Defendant Zurich in the form of an order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding him back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding him lost fringe benefits in an amount yet to be determined; (5) awarding him liquidated damages in an amount yet to be determined; (6) awarding him damages for emotional distress, humiliation and embarrassment; (7) awarding him the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting him claims of discrimination; (8) awarding him punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

## COUNT V
### Family Medical Leave Act ("FMLA")

169.   Plaintiff Jeffry Brooks hereby incorporates by reference each and every allegation and averment in paragraphs numbered 1 through 168 above as though fully set forth herein.

170.   Plaintiff was eligible for and entitled to the benefits under the FMLA.

171.   Plaintiff was deprived of the benefits he was entitled to under the FMLA.

172.   The Defendant was an "employer" as that word is defined at 29 U.S.C. §2611(4)(A)(i).

173.   The Defendant was a "person" as that word is defined at 29 U.S.C. §2611(8).

174.    The Defendant was at all times material hereto engaged in "commerce" or was engaged in an "industry or activity affecting commerce," as that word and phrase are defined in 29 U.S.C. § 2611(1) and at 29 U.S.C. § 142(1) and (3), as made applicable by 29 U.S.C. § 2611(1).

175.    The Plaintiff was an "eligible employee" as that phrase is defined by 29 U.S.C. § 2611(2)(A)(i) and (ii).

176.    The Defendant interfered with, restrained and denied the exercise by the Plaintiff of him rights under 29 U.S.C. § 2611, et seq. in violation of 29 U.S.C. § 2615(a).

177.    The Defendant retaliated against the Plaintiff for taking leave that he was entitled to pursuant 29 U.S.C. § 2612(b).

178.    The Plaintiff provided the Defendant notice of the necessity for leave under 29 U.S.C. § 2612(e)(2)(B).

179.    Defendant willfully violated the FMLA and retaliated against the plaintiff when he returned after taking approved FMLA leave.

180.    Defendant willfully violated the FMLA and retaliated against the plaintiff when he continued to be on approved intermittent FMLA leave.

WHEREFORE plaintiff Jeffry Brooks respectfully prays for judgment in his favor and against defendant Zurich in the form of the order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding him back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding him lost fringe benefits in an amount yet to be determined; (5) awarding him liquidated damages in an amount in an amount yet to be determined; (6) awarding him damages for humiliation and

embarrassment; (7) awarding him the costs and expenses, including, but not limited to, attorneys'

fees and expert witness' fees, incurred in prosecuting him claims of discrimination; (8) awarding

him punitive damages; and (10) awarding such other and further relief as this Court deems just

and proper.

## COUNT VI
### FMLA Retaliation

181.    Plaintiff Jeffry Brooks hereby incorporates by reference each and every allegation

and averment in paragraphs numbered 1 through 180 above as though fully set forth herein.

182.    The defendant retaliated against Mr. Brooks due to his disabilities and for taking

FMLA leave.

183.    Mr. Brooks' write ups and subsequent termination constituted retaliatory practices

in violation of the FMLA.

184.    Mr. Brooks' disabilities and his taking of FMLA leave were determining factors

in Zurich's retaliation and discrimination of Mr. Brooks.

185.    Zurich was aware of the prohibitions against retaliation such that defendant's

actions were willful, entitling plaintiff to an award of liquidated damages.

186.    Defendant willfully violated the FMLA and retaliated against the plaintiff when

he returned after taking approved FMLA leave.

187.    Defendant willfully violated the FMLA and retaliated against the plaintiff when

he continued to be on approved intermittent FMLA leave.

188.    As a direct and proximate result of defendant's actions in violation of the FMLA,

plaintiff sustained damages in the form of loss of salary and fringe benefits, including, but not

limited to, contributions to Social Security and Medicare, health insurance, bonuses and stock

options for which plaintiff seeks back pay.

189.   Plaintiff seeks the reasonable attorneys' fees and expenses incurred herein.

190.   Zurich's retaliation against Mr. Brooks was a direct and proximate result of Mr. Brooks' disabilities and him taking FMLA leave under the FMLA.

191.   Zurich's retaliation against Mr. Brooks for taking FMLA leave constituted egregious willful, wanton or malicious conduct.

192.   As a result of defendant's conduct, Mr. Brooks has suffered economic and emotional damages.

193.   As a result of Defendant's conduct, Mr. Brooks has sustained past, present and future losses.

194.   As a result of Zurich's conduct, Mr. Brooks has suffered emotional distress, humiliation and embarrassment.

195.   The retaliatory conduct of the defendant against Mr. Brooks was willful, wanton or malicious, justifying the imposition of an award of punitive damages against Zurich.

196.   Upon information and belief, Zurich has engaged in a pattern or practice of discrimination and retaliation against people that have requested to take or have taken FMLA leave, and Zurich's conduct towards Mr. Brooks was a part of this pattern or practice.

WHEREFORE plaintiff Jeffry Brooks respectfully prays for judgment in his favor and against defendant Zurich in the form of the order of this Court: (1) permanently restraining defendant from ever again discriminating or retaliating against plaintiff or any other individual on the basis of that individual's disability; (2) awarding him back pay in an amount yet to be determined; (3) awarding him front pay in an amount yet to be determined; (4) awarding him lost fringe benefits in an amount yet to be determined; (5) awarding him liquidated damages in an

amount in an amount yet to be determined; (6) awarding him damages for humiliation and embarrassment; (7) awarding him the costs and expenses, including, but not limited to, attorneys' fees and expert witness' fees, incurred in prosecuting him claims of discrimination; (8) awarding him punitive damages; and (10) awarding such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands trial by jury in Kansas City of all issues so triable as a matter of right.

Respectfully submitted,

MCKEE LAW, L.L.C.

/s/ Aaron C. McKee                                      KS# 20889
Aaron C. McKee
13470 S. Arapaho Drive, Suite 170
Olathe, Kansas 66062
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@mckee-law.com
**ATTORNEY FOR PLAINTIFF JEFFRY BROOKS**

### VERIFICATION

STATE OF KANSAS           )
                          ) ss:
COUNTY OF JOHNSON         )

Jeffry R. Brooks, of lawful age, upon his oath being first duly sworn, states that he is the plaintiff herein; that he has read the above and foregoing, knows the contents thereof, and that he believes that the statements and allegations therein contained are true.

JEFFRY R. BROOKS

Subscribed and sworn to before me this 1st day of November, 2011.

My appointment expires:

Notary Public

NOTARY PUBLIC - State of Kansas
AARON C. McKEE
My Appt. Exp. 7/16/15

Complaint, Brooks v. Zurich